# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS CARMICHAEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-869-D |
| | ) |
| THE OKLAHOMA DEPARTMENT | ) |
| OF CORRECTIONS, JOE M. | ) |
| ALLBAUGH, Director, and THE | ) |
| CITY OF OKLAHOMA CITY, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Motion to Dismiss [Doc. No. 7], to which Plaintiff has responded [Doc. No. 8]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff pled guilty to charges of First Degree Rape, Indecent or Lewd Acts With A Child Under Sixteen, and Indecent Exposure in May 2002. Because of his convictions, Plaintiff is required to register as a convicted sex offender pursuant to the Oklahoma Sex Offenders Registration Act (OSORA), Okla. Stat. tit. 57, §§ 581-590.2. In January 2012, Plaintiff was discharged from prison and registered as a sex offender. Plaintiff was again convicted of Lewd Acts With a Child Under Sixteen in August 2015 and sentenced to four years' imprisonment followed by ten years of probation. Plaintiff was discharged from prison in December 2016.

On November 1, 2015, amendments to Okla. Stat. tit. 57, § 590 became effective. These amendments made it "unlawful for any person registered pursuant to the Sex Offenders Registration Act to reside, either temporarily or permanently, within a two-thousand-foot radius of any . . . park that is established, operated or supported in whole or in part by a homeowners' association or a city, town, county, state, federal or tribal government, or a licensed child care center as defined by the Department of Human Services." Okla. Stat. tit. 57, § 590(A). On November 22, 2016, and January 17, 2017, Plaintiff was advised by the City of Oklahoma City that his Edmond, Oklahoma home was "not acceptable" as a place for him to reside due its proximity to a park. Plaintiff alleges this area is not a "park," but a small greenbelt owned by the homeowners' association for the area where Plaintiff owns real property and is not used for any recreational purposes.

Although Plaintiff's Amended Complaint [Doc. No. 1-8][1] is drafted in a way which may appear he is only stating two causes of action, he in fact states three. First, Plaintiff contends that § 590 violates the *Ex Post Facto* Clause of the United States Constitution as its residency restriction as amended after his conviction to include parks "established, operated or supported in whole or in part by a homeowner's association" is a retroactive punishment. Second, Plaintiff asserts a claim for a violation of the *Due Process* Clause of the United States Constitution in that the definition of "park" is: (1) broadly drawn, (2) carries little to no weight in terms of protecting and promoting public safety, (3) has the punitive effect of denying Plaintiff the ability to reside in the home he has owned for

---

[1] Plaintiff's action was timely removed from state court; accordingly, the Court will use federal nomenclature when addressing his pleadings.

twenty-three years and prior to his convictions, and, (4) does not encompass the greenbelt as defined by Okla. Stat. tit. 21, § 1125(G). Plaintiff contends he has suffered lost job opportunities, public humiliation, affirmative restraints on his liberty, and deprivation of the enjoyment of his property as a result of his status as a registered sex offender. Finally, Plaintiff seeks a declaration that states he is allowed to establish residence at the subject property, as well as an injunction enjoining Defendants from prohibiting him from establishing residence at the home.

Defendants move to dismiss Plaintiff's action on the grounds that: (1) the residency restriction does not violate the *Ex Post Facto* Clause, and, (2) Plaintiff has failed to state a claim for declaratory relief. Defendants do not address Plaintiff's due process claim.

## STANDARD OF DECISION

A pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

However, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679; *see also Khalik v. United Air*

3

*Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (noting that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," quoting *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011)). Therefore, *Iqbal* and *Twombly* provide "no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik*, 671 F.3d at 1191 (citing *Iqbal*, 556 U.S. at 678).

For these reasons, the Tenth Circuit held that the *Iqbal*/*Twombly* pleading standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik*, 671 F.3d at 1191 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). The pleader's allegations need only provide the "defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. at 1192 (quoting *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)) (internal quotations omitted). In other words, "Rule 8(a)(2) still lives." *Id*. at 1191.

**I.**     ***Ex Post Facto* Claim**[2]

Article I, Section 10, Clause 1 of the U.S. Constitution provides that "[n]o . . . state shall . . . pass . . . any ex post facto law." Plaintiff cites to *Starkey v. Oklahoma Department of Corrections*, 2013 OK 43, 305 P.3d 1004, for the proposition that OSORA is punitive

---

[2] Plaintiff includes his claim for violation of the *Ex Post Facto* Clause within his due process claim. *Amended Complaint* [Doc. No. 1-8] at ¶ 16.

4

in nature and, therefore, a retroactive punishment in violation of the U.S. Constitution's *Ex Post Facto* Clause. *Plaintiff's Response* at 3. However, although the Court is bound by a state supreme court's interpretations of its own statutes, this Court is not so bound when determining whether those statutes violate the United States Constitution. *Shaw v. Patton*, 823 F.3d 556, 563 (10th Cir. 2016). In order for a statute to be in violation of the *Ex Post Facto* Clause, it must: (1) be applied retroactively, and, (2) if based on a civil legislative intent, it must have such a punitive effect so as to negate the civil intention. *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146-1147, 155 L. Ed. 2d 164 (2003).

**A. OSORA is being enforced retroactively.**

Defendants deny that OSORA is being enforced retroactively as to Plaintiff. They argue that the statute was not applicable to Plaintiff until his release from prison or, in the alternative, until he moves to a prohibited address.[3] *Defendants' Motion to Dismiss* at 4. The Tenth Circuit rejected a similar argument in *Shaw*. There, the Oklahoma Department of Corrections argued that OSORA did not apply to the plaintiff until the date he entered Oklahoma and was, therefore, not retroactively enforced. *Shaw*, 823 F.3d at 560. The Tenth Circuit stated that "[a] statute is enforced retroactively if it governs conduct that preceded the statute's enactment" and went on to explain that the conduct subject to OSORA is the conduct for which the sex offender was convicted. *Shaw*, 823 F.3d at 560

---

[3] An offender is informed that certain residences are prohibited only if OSORA applies to him. Yet, Defendants' alternative argument states, inexplicably, that OSORA does not apply until the offender moves, or attempts to move, into a residence that is prohibited by OSORA. *Defendants' Motion to Dismiss* at 4.

5

(citing *Stogner v. California*, 539 U.S. 607, 612-13, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003)). The Tenth Circuit determined that "[the plaintiff] is subject to restrictions on reporting, residency, and loitering only because Oklahoma changed its laws years after [the plaintiff's] criminal conduct" and "[b]y definition, these restrictions are being retroactively applied." *Id*. As in *Shaw*, OSORA, as amended on November 1, 2015, is being applied to Plaintiff retroactively for conduct resulting in his conviction on August 7, 2015. *Amended Complaint* at ¶ 8; *Defendants' Motion to Dismiss* at 4.

### B. Punitive Effect

In order to determine whether Plaintiff states a claim that OSORA, as applied to him, constitutes a retroactive punishment prohibited by the *Ex Post Facto* Clause, the Court must apply the "intents-effects" inquiry outlined in *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146-1147 155 L. Ed. 2d 164 (2003). *See Shaw v. Patton,* 823 F.3d 556, 561 (10th Cir. 2016); *Klein v. Jones*, CIV-12-1064-F, 2012 WL 6962975, at *6-7 (W.D. Okla. Dec. 27, 2012), *report and recommendation adopted*, *Klein v. Jones*, No. CIV-12-1064-F, 2013 WL 360050 (W.D. Okla. Jan. 29, 2013); *Gautier v. Jones*, No. CIV-08-445-C, 2009 WL 1444533, at *4-5 (W.D. Okla. May 20, 2009), *rev'd on other grounds, Gautier v. Jones*, 364 Fed. Appx. 422 (10th Cir. 2010) (unpublished). First, the Court must determine whether the intent of the Oklahoma Legislature was to impose punishment or a civil regulatory scheme. Second, if the intent was not punitive, the Court must determine if it is plausible that Plaintiff will be able to demonstrate that the statute's effects are "so punitive either in purpose or effect as to negate" the legislative intent. *Smith*, 538 U.S. at 92 (internal quotations omitted).

Plaintiff acknowledges a non-punitive intent of OSORA. *Amended Complaint* at ¶ 17; *Plaintiff's Response* at 5. Indeed, the legislative intent behind OSORA has been described as that of creating a civil regulatory scheme to protect public safety. *Klein*, 2012 WL 6962975, at *7; *Gautier*, 2009 WL 1444533, at *6. Because Plaintiff makes no argument that the legislative intent was to punish, the Court need not examine the legislative intent any further. Next, the Court must determine, for purposes of the Defendants' Motion to Dismiss, whether Plaintiff has alleged facts, if taken as true, sufficient to show that it is plausible that the challenged OSORA residency restriction has a punitive effect. At trial, Plaintiff will have to present the "clearest proof to override legislative intent and transform what has been denominated a civil remedy to that of a criminal penalty." *Smith*, 538 U.S. at 92.

In analyzing the effect of the Alaska Sex Offender Registration Act, the *Smith* Court considered the following factors:

> whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Smith*, 538 U.S. at 97. These factors are "neither exhaustive nor dispositive" but "useful guideposts." *Id*. (quoting *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) and *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). In *Shaw*, the Tenth Circuit applied these guideposts to the OSORA restrictions prohibiting a registered sex offender "from living within 2,000 feet of a school, playground, park, or child care center." *Shaw* 823 F.3d at 559.

In applying the guideposts of *Smith*, the Tenth Circuit determined that the residency restrictions were not so punitive as to override the legislative civil intent of OSORA. The court concluded that the restrictions did not resemble historical or traditional forms of punishment in the form of banishment as the plaintiff was not expelled from an entire community. *Shaw*, 823 F.3d at 568. The residency restrictions did not constitute an affirmative disability or restraint sufficiently harsh to be considered punitive because they are less severe than a ban on working in a particular field, which is considered non-punitive, and because OSORA does not require the plaintiff to relocate in the event of a subsequent opening of a nearby school, playground, park, or child care center. *Id*. at 570 (citing *Smith*, 538 U.S. at 100). The court reasoned that OSORA did not promote the traditional aims of punishment because a deterrent effect is common to civil regulation and that the residency restrictions "lack a sufficiently strong deterrent effect to render [OSORA] punitive." *Id*. at 571. In addition, the court found that the OSORA restrictions lacked a sufficiently strong retributive effect to render it punitive because, any "expression of condemnation" in the statute was "not sufficiently clear or strong to negate the legislature's non-punitive intent." *Id*.

The court then examined whether the residency restrictions were rationally related to the non-punitive objective of protecting public safety. *Id*. at 573. The court stated that this is "the 'most significant factor' in considering the statute's punitive effect." *Id*. (quoting *Smith,* 538 U.S. at 102). The Tenth Circuit determined that the Oklahoma legislature enacted OSORA to protect public safety "by reducing recidivism among sex offenders, improving law enforcement's ability to identify sex offenders, and enabling law

enforcement to alert the public to potential danger from these offenders." *Id*. (citing *Starkey v. Okla. Dep't of Corrs.,* 305 P.3d 1004, 1020 (Okla.2013)). The court then concluded the restrictions "place children out of sight and mind, beyond senses that could stir the perversions of known child sex offenders" and that "at least arguably, a 2000-foot restriction reduces opportunity, diminishes temptation, and thereby decreases the risk that a proven child sex offender will reoffend." *Id*. at 574.

Nor did the *Shaw* court find OSORA to be excessive specifically as to the plaintiff in relation to the non-punitive purpose of public safety. The court reiterated that residency restrictions are "generally designed to reduce temptations and opportunities for sex offenders to prey on children" and stated that "a categorical rule for sex offenders" was reasonable to advance that goal. *Id*. at 576. The plaintiff had not shown that he had a particularly low risk of recidivism or that the residency restriction went beyond what was necessary in his own circumstances. *Id*. at 576-577. Therefore, the court concluded that the residency restrictions did not constitute an excessive burden on sex offenders. *Id*. at 577.

Based on the application of the *Smith* guideposts, the court held that retroactive enforcement of OSORA did not constitute a punitive effect negating the statute's civil regulatory legislative intent as required to find violation of the *Ex Post Facto* Clause of the United States Constitution. *Id*. at 577. The only difference in the OSORA provision challenged in this case and that examined in *Shaw* is the description of "park." The amendments at issue in this case expand the category of qualifying parks to include any

9

"park that is established, operated or supported in whole or in part by a homeowners' association. . . ." Okla. Stat. tit. 57, § 590(A).

Plaintiff alleges the park at issue "is not actually used by the public for any recreational purpose" and, therefore, "carries little or no weight" in furthering the non-punitive legislative intent of OSORA. *Amended Complaint* at ¶ 16. Plaintiff states that "park" is defined as "any outdoor public area specifically designated as being used for recreational purposes."[4] *Amended Complaint* at ¶14 (quoting 2015 Oklahoma Session Laws § 270). Plaintiff does not allege that the park (or greenbelt) was not designated for recreational purposes. Nor does Plaintiff allege that the park was improperly designated for recreational purposes. Plaintiff alleges only that it is, in fact, not used for recreational purposes. *Id*. A park that is designated for recreational purposes is open for such use, and it is this incidental public use of the park that is subject to the civil, non-punitive intent of protecting the public.

Taken as true, Plaintiff's allegations do not set forth sufficient facts to distinguish the effect of OSORA's amended residency restrictions from the Tenth Circuit's reasoning as to the similar restrictions in *Shaw*. The minimal expansion of "parks" to include those "established, operated, or supported in whole or in part by a homeowners' association" does not alter the results of the "intents-effects" test of *Smith* as applied to the residency restrictions in *Shaw*. Moreover, unlike the plaintiff in *Shaw* who failed to show that his own risk of recidivism was low in order to establish the residency restrictions were

---

[4] This definition is found in Okla. Stat. tit. 21, § 1125, Zone of Safety Around Schools, Child Care Facilities, Playgrounds, and Parks - Penalties – Exemptions.

excessive as applied to him, Plaintiff recites facts in his Amended Complaint demonstrating his high risk of recidivism. *Amended Complaint* at ¶ 6-9. Applying the reasoning of *Shaw* here, OSORA's amended residency restrictions as to parks are not sufficiently punitive to negate the civil intent of OSORA. Defendants' Motion to Dismiss as to Plaintiff's claim that OSORA violates the *Ex Post Facto* Clause is granted, with leave for Plaintiff to amend.

## II. Due Process Claim

Although Defendants have moved "to dismiss Plaintiff's Amended Petition" in its entirety, Defendants do not challenge Plaintiff's claim for relief pursuant to the *Due Process* Clause of the United States Constitution. *See Defendants' Motion to Dismiss* at 1, 6, and 8. A claim for violation of the *Ex Post Facto* Clause is independent from a claim for violation of the *Due Process* Clause regardless of the manner in which the pleading is organized. Because Defendants' Motion to Dismiss does not expressly address this claim, it is denied.

## III. Declaratory Relief

Plaintiff's Amended Complaint states that he is seeking declaratory relief. Plaintiff does not state the legal basis for his claim. The Amended Complaint was filed in Oklahoma state court and Defendants have briefed their Motion to Dismiss based on the Oklahoma Declaratory Judgment Act, Okla. Stat. tit. 12, §§ 1651-1657. However, state statutes governing declaratory relief are procedural, rather than substantive, in nature. *See Horace Mann Ins. Co. v. Johnson By & Through Johnson*, 953 F.2d 575, 577 (10th Cir. 1991); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). The

Oklahoma Declaratory Judgment Act "merely provides another procedure whereby parties may obtain judicial relief." *Id*. at 1386.

This case was removed to this Court pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction. *Notice of Removal* [Doc. No. 1] at 3.[5] Plaintiff's claims arise from the United States Constitution and, therefore, this Court has original jurisdiction under 28 U.S.C. § 1331 and 1343. *Id*. The federal courts apply federal procedural law to cases both removed to federal court as well as those filed directly therein. *See Hanna v. Plumer*, 380 U.S. 460, 465, 473, 85 S. Ct. 1136, 1145, 14 L. Ed. 2d 8 (1965) (federal courts siting in diversity apply state substantive law and federal procedural law); Fed. R. Civ. P. 81(c)(1) (stating that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."). Therefore, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than the Oklahoma Declaratory Judgment Act, governs Plaintiff's claim for declaratory relief. *See Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1299 n.2 (W.D. Okla. 2012), *aff'd, Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014) (applying the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than the Oklahoma Declaratory Judgment Act, Okla. Stat. tit. 12, § 1651, to the plaintiff's assertion for declaratory relief); *Cousino v. City of Tulsa*, No. 12-CV-0223-CVE-TLW, 2012 WL 1455211, at *1 n.1 (N.D. Okla. Apr. 26, 2012) (stating that although the case was filed in state court seeking a remedy under the Oklahoma Declaratory Judgment Act, Okla. Stat.

---

[5] Plaintiff did not challenge removal and, therefore, there is no need for the Court to discuss the basis of its jurisdiction any further.

tit. 12, § 1651, "the plaintiff's right to declaratory relief is governed by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.").

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (2010), provides that:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

For the purposes of the Federal Declaratory Judgment Act, "actual controversy" refers to the case-or-controversy requirements of Article III of the U.S. Constitution. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1241 (10th Cir. 2008) (citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126, 127 S.Ct. 764, 771, 166 L. Ed. 2d 604 (2007)). To determine if an "actual controversy" exists, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

Defendants challenge Plaintiff's claim for declaratory relief only as to whether they are "real parties in interest" under Okla. Stat. tit. 12, § 1653. *Defendants' Motion to Dismiss* at 6-8. Although Defendants do not address the Federal Declaratory Judgment Act, they do argue that Plaintiff fails to:

> specifically allege that the Department of Corrections or its Director have taken any steps against Plaintiff or even what steps these Defendants might take if Plaintiff was in violation of the statute.

13

*Defendants' Motion to Dismiss* at 7.  To the extent that this can be construed as an argument that no actual controversy exists under the Federal Declaratory Judgment Act, the Supreme Court in *MedImmune* rejected previous decisions that held declaratory plaintiffs must show a reasonable apprehension of action by the declaratory defendant.  *MedImmune*, 549 U.S. at 118, 132, n.11, 133, 137; *Surefoot*, 531 F.3d at 1242.  Nor must a party "'bet the farm' by taking actions that could subject them to substantial liability before obtaining a declaration of their rights." *Id*. at 1243.

Contrary to Defendants' assertions, Plaintiff has alleged in his Amended Complaint sufficient facts, if taken as true, to satisfy the *MedImmune* inquiry as to whether an "actual controversy" exists.  Plaintiff alleges that amendments to OSORA violate his rights under the *Due Process* Clause of the United States Constitution and that the Department of Corrections supervises his probation, enforces OSORA's registry requirements and punishes violations thereof.  *Amended Complaint* at ¶ 2, 11 and 19.  Plaintiff further alleges that as a result of OSORA, he is "restrained from residing in his residential real estate under threat of arrest and prosecution." *Id*. at 4.  Taken as true, Plaintiff's alleged facts establish that he, as a sex offender subject to OSORA, is an "interested party" seeking a declaration as to his "rights and other legal relations" with regard to the application of OSORA's residency restrictions to him.  The alleged facts also establish that Defendants have adverse legal interests to Plaintiff of sufficient immediacy and reality.

Defendants' Motion to Dismiss as to Plaintiff's claim for declaratory relief is therefore denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. No. 7] is GRANTED in part and DENIED in part, as set forth herein. The Court further orders that, although Plaintiff has already amended once and has not requested leave to amend in his response brief, Plaintiff is granted leave to amend his claim in conformity with the rulings set forth in this Order. Plaintiff shall file his Amended Complaint, if any, within twenty-one (21) days of this Order.

**IT IS SO ORDERED** this 23rd day of March, 2018.

*[signature]*
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE