# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS CARMICHAEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-869-D |
| | ) |
| THE OKLAHOMA DEPARTMENT OF | ) |
| CORRECTIONS, and JOE M. ALLBAUGH, | ) |
| as Director, and the CITY OF OKLAHOMA | ) |
| CITY. | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants' Joint Brief in Opposition of Granting Plaintiff Summary Judgment [Doc. No. 39]. The Joint Opposition was filed in response to the undersigned's Order [Doc. No. 34] directing Defendants to show why Plaintiff is not entitled to summary judgment on his claims. Order [Doc. No. 34] at 10–11.

## BACKGROUND

At issue in this case[1] is the application of the residency restrictions of the Oklahoma Sex Offender Registration Act ("OSORA"), Okla. Stat. tit. 57, § 590(A), to Plaintiff's home. The relevant residency restrictions provide that it is:

> unlawful for any person registered pursuant to the Sex Offenders Registration Act to reside, either temporarily or permanently, within a two-thousand-foot radius of any . . . ***playground or park*** that is established, operated or supported in whole or in part by a homeowners' association.

Okla. Stat. tit. 57, § 590(A) (emphasis added). The statute goes on to define "park" as

---

[1] The facts are fully recounted in this Court's previous Order [Doc. No. 34].

"any outdoor public area *specifically designated* as being used for recreational purposes that is operated or supported in whole or in part by a homeowners' association." Okla. Stat. tit. 21, § 1125. Plaintiff acknowledged these restrictions and definitions in writing prior to his release from incarceration in 2016. Notice of Duty to Register (pursuant to Okla. Stat. tit. 57, §§ 581–590.2, 21, §§ 1125) [Doc. No. 31-6] at ¶¶ 9–10 (emphasis added).

On January 17, 2017, Oklahoma City notified Plaintiff that—pursuant to OSORA—his home address was "not acceptable" because of an unidentified "park/playground." Address Check Form [Doc. No. 31-9]. Plaintiff sued stating three causes of action: (1) that, as applied, § 590 of OSORA violates Article 1, Section 10, the *Ex Post Facto* Clause of the United States Constitution; (2) that, as applied, § 590 of OSORA violates the Fourteenth Amendment's Due Process Clause; and (3) claim for declaratory relief and an injunction to enjoin Defendants from enforcing OSORA against Plaintiff. Second Amended Complaint [Doc. No. 10] at 2–5.

Defendant City of Oklahoma City ("Oklahoma City") filed its Motion for Summary Judgment on April 8, 2019. [Doc. No. 31]. Oklahoma City argued there was no dispute as to whether the OSORA residency restrictions applied to Plaintiff, as his residence is located within 2,000 feet of "common areas" or "a large piece of land." Order [Doc. No. 34] at 5, 8. Oklahoma City attempted to show that several nearby "common areas" and "large piece[s] of land" are operated or supported by a homeowners' association and noted that the land "*can* be used anytime for recreational purposes." Order [Doc. No. 34] at 5, 8 (quoting Motion [Doc. No. 31] at 17) (emphasis added). Oklahoma City did not identify which of these "common areas" or "large piece[s] of land" was the "park/playground" used

to make the original determination that Plaintiff's home was "not acceptable," pursuant to OSORA. Rather, Oklahoma City "instead refer[red] to multiple common areas it alleges are sufficient to trigger the residency restrictions." Order [Doc. No. 34] at 5, n.3.

In response to Defendant's Motion for Summary Judgment, Plaintiff disputed whether the "common areas" are parks or playgrounds within the meaning of OSORA. Plaintiff's Response to Motion for Summary Judgment [Doc. No. 32]. Plaintiff contested the application of the residency restrictions based on those "common areas." He asserted that, given this unresolved matter of statutory interpretation, a question of law precluded summary judgment in favor of Oklahoma City. *Id*. at 1.

On May 17, 2019, the Court determined that Oklahoma City failed to provide any evidence that the "common areas" were "established, operated or supported in whole or in part by a homeowner's association," nor that they had been "specifically designated as being used for recreational purposes," as required by OSORA.[2] Order [Doc. No. 34] at 6–9 (citing Okla. Stat. tit. 57, § 590(A); Okla. Stat. tit. 21, § 1125). Oklahoma City did not establish that it was entitled to judgment as a matter of law. Based on the lack of evidence

---

[2] The Court noted that:

> Oklahoma City relie[d] entirely on materials that are not in conformance with Fed. R. Civ. 56(c)(1)(A). Rule 56(c)(1)(A) requires that a party asserting an undisputed material fact must "cite to particular parts of materials **in the record**." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Oklahoma City omits any citation indicating that Exhibits 1, 3, 5, 6, 7, 8, 9, 10, and 11 to its Motion can be found in any part of the record enumerated by Rule 56(c)(1)(A) or reference to any authoritative case law supporting the Exhibits' admissibility.

Order at 6, n.4. Plaintiff failed to object, and the Court, in its discretion, considered these exhibits. *Id*.

supporting the application of the residency restrictions, the Court directed all Defendants to show cause why summary judgment should not be granted to Plaintiff. Order [Doc. No. 34] at 9–10, 11.

Defendants collectively filed a Joint Brief in Opposition of Granting Plaintiff Summary Judgment. [Doc. No. 39]. The Joint Opposition asserts that a question of material fact remains, as the "question of how the subject common areas have been specifically designated or provided must be answered." Joint Opposition at 4. Plaintiff did not respond to Defendants' Joint Opposition. Because the Court directed Defendants to show cause why summary judgment for Plaintiff should not be granted, Plaintiff is free to rest on the insufficiency of Defendants' filing.

## JURISDICTION

This Court has federal question jurisdiction over the present action based on the two constitutional challenges brought against Okla. Stat. tit. 57, §590. 28 U.S.C. § 1331. The Court, however, will not now reach these issues; the case is properly—and more narrowly—resolved through the application of OSORA. The Court, in its discretion, retains subject matter jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(c).

While this narrow disposition leaves undecided legal issues argued by the parties, the Court deems it unnecessary and improper to opine on the constitutional questions. The United States Supreme Court and fundamental adjudicatory principles suggest that this Court "*should* forbear resolving [these] issue[s]." *Camreta v. Greene*, 563 U.S. 692 (2011) (emphasis in original). The "longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Id*.

(quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 445 (1988)); *see also Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring).

This case can be fully and properly resolved without reaching the constitutional issues presented. The Court's holding on the inapplicability of the OSORA restrictions to Plaintiff moots the constitutional issues raised in this case. The Court, therefore, does not decide them.

## STANDARD OF DECISION

Pursuant to Fed. R. Civ. P. 56(f), a court may consider summary judgment on its own after giving the parties notice and a reasonable time to respond. Generally, the Tenth Circuit does not "favor granting of summary judgment *sua sponte*," but "a district court may do so if the losing party was on notice that she had to come forward with all of her evidence." *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 323; *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

5

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted).

## DISCUSSION

Defendants here were put on notice regarding the Court's consideration of a grant of summary judgment against them. They were given ample opportunity to establish that the subject residency restrictions were applied pursuant to OSORA. *See* Order [Doc. No. 34]. Defendants presented no evidence refuting Plaintiff's assertion that OSORA was inappropriately applied to his home. *Id.*; *see also* Joint Brief in Opposition of Granting Plaintiff Summary Judgment [Doc. No. 39]. Because Defendants failed to present sufficient evidence to show a genuine factual dispute that a park or playground, as defined by Okla. Stat. tit. 57, § 590(A) and Okla. Stat. tit. 21, § 1125, is located within 2,000 feet of Plaintiff's home, the Court may properly grant summary judgment to Plaintiff on his claim for declaratory relief. Fed. R. Civ. P. 56(f).

In the Joint Opposition, Defendants rely on "multiple common areas" depicted in an unofficial Falcon Ridge Estates plat to justify the application of the OSORA residency restrictions to Plaintiff's home. Joint Opposition [Doc. No. 39] at 3. Defendants assert that a genuine issue of material fact remains because "the question of how the subject

6

common areas have been specifically designated or provided must be answered." *Id*. at 2, 3–4. Defendants argue that: (1) the common areas are "playgrounds" based on a definition found in statutes regulating body piercing and tattooing; (2) the common areas need not be "specifically designated" as a park based on "[t]he fact that they exist"; and, (3) Defendants "can think of no other purpose other than recreational use for a 'common area' that resembles an open field." *Id*. at 3. As set forth *infra*, the Court rejects Defendants' arguments.

I. **The Alleged Common Areas are Neither Parks nor Playgrounds**

It is undisputed that the OSORA residency restrictions were applied to Plaintiff's home. Motion for Summary Judgment [Doc. No. 31] at 7 (citing Address Check Form [Doc. No. 31-9]). To apply the residency restrictions, Defendants determined Plaintiff could not live in his home due to a nearby "park/playground." *Id*. Defendants have repeatedly asserted that "multiple common areas" are located within two thousand feet of the residence in question, and that these "common areas" are either "parks" or "playgrounds" within the definitions of OSORA. Joint Opposition [Doc. No. 39] at 1, 2. Simultaneously, Defendants assert that summary judgment for Plaintiff should be denied because "this Court determined that Defendant City failed to establish any of the common areas had been specifically designated as a park," and "how the common areas are being used and/or have been designated is still a material fact in dispute." Joint Opposition [Doc. No. 39] at 2.

The Court finds these arguments unpersuasive. Defendants determined, before filing this action, that a "park/playground" near Plaintiff's home triggered OSORA's

7

residency restrictions. Address Check Form [Doc. No. 31-9].[3] Accordingly, Defendants bear the burden of demonstrating that this application of OSORA was appropriate. How the "common areas" are "being used and/or have been designated" is immaterial. Defendants' evidence fails to establish that—as required by the plain language of the statute—the "common areas" meet the minimum proximity and homeowner's association requirements of the residency restrictions of OSORA. *See Fulsom v. Fulsom*, 2003 OK 96, ¶ 7, 81 P.3d 652, 655 ("The plain meaning of a statute's language is conclusive except in the rare case when literal construction would produce a result demonstrably at odds with legislative intent."). As it stands, the record evidence reflects no genuine dispute regarding whether the alleged "common areas" are, in fact, "common areas" at all, or parks, or playgrounds as defined in OSORA. To show cause why summary judgment should not be entered in favor of Plaintiff, the Court explicitly directed Defendants to present evidence in compliance with Fed. R. Civ. P. 56 and the Local Rules of this Court. In response,

---

[3] Defendant Oklahoma City presented the Address Check Form as evidence that OSORA applied to Plaintiff's address based upon a "park/playground." Motion for Summary Judgment [Doc. No. 31], Ex. 9. The Address Check Form is dated January 17, 2017. *Id.* The Court notes that each filing submitted in support of applying the residency restrictions to Plaintiff's home cites to different "common areas" as the qualifying park or playground. *Cf.* Motion for Summary Judgment [Doc. No. 31] at 16, 17, *with* Map of Common Areas [Doc. No. 31-5]; Aerial Photograph [Doc. No. 31-10]; Aerial Photograph [Doc. No. 31-11]; Joint Opposition at 3; Falcon Ridge Plat [Doc. No. 39-1]. The Court finds troubling: (1) the fact that Defendants cannot point with specificity to the "park/playground" they relied on in determining the address "unacceptable"; and, (2) the lack of specific identification on the Address Check Form of the particular park or playground used to make the determination.

Defendants attach only a semi-legible printout of a plat marked across its face as "UNOFFICIAL." Falcon Ridge Plat [Doc. No. 39-1].

At the Defendants' request, the Court takes judicial notice of the Oklahoma County Court Clerk's records.[4] *See* Joint Opposition [Doc. No. 39] at 3, n.3. Nonetheless, the Court finds that the plat fails to satisfy Defendants' evidentiary burden. Defendants contend that this plat demonstrates three common areas "provided for the homeowners that live within [the Falcon Ridge Estates] subdivision." Joint Opposition [Doc. No. 36] at 3. The plat, however, does not include the lot on which Plaintiff's residence sits nor the Plaintiff's street, and does not appear to be to scale. The plat, further, fails to establish that the purported common areas it depicts are operated or supported by a homeowner's association. A "plat" is nothing more than "[a] map describing a piece of land and its features, such as boundaries, lots, roads, and easements." BLACK'S LAW DICTIONARY 1171 (7th ed. 1999). Contrary to Defendants' assertion, the plat does not indicate ownership, support, or operation by a homeowner's association of the so-called common areas.

The Court likewise takes judicial notice of the Oklahoma County Assessor's records and finds that these records directly contradict Defendants' position. *See* Order [Doc. No. 34] at 8, n.6. A review of the Oklahoma County Assessor's records reveals that none of the "common areas" indicated on the plat are owned by Falcon Ridge Estates HOA, Inc.

---

[4] "A court may take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tatten v. City & City of Denver*, 730 Fed. Appx. 620, 624 (10th Cir. 2018), *cert. denied sub nom. Tatten v. City & City of Denver, Colo.*, 139 S. Ct. 826, 202 L. Ed. 2d 579 (2019) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1194 (10th Cir. 2010)).

Instead, all of the "common areas" on the plat are designated as residential lots owned by various private individuals. Common area "A" is owned by Milford and Janice Roberts. Oklahoma County Tax Assessor Account No. R207931395. Common area "B" is owned by Sandra Garza. Oklahoma County Tax Assessor Account No. R207931400. Common area "C" is owned by Alicia and Larry Dye. Oklahoma County Tax Assessor Account No. R207931410. Defendants present no evidence indicating that these privately-owned residential lots are operated or supported by a homeowner's association. Accordingly, these "common areas" fail to meet the statutory requirements necessary to trigger the residential restrictions of OSORA.

Defendants have failed to present any evidence that Plaintiff's home is within two thousand feet of an "outdoor public area" that is either a playground or a park "operated or supported in whole or in part by a homeowners' association" and specifically designated for recreational purposes. Okla. Stat. tit. 21, § 1125.[5] Therefore, Defendants have failed to demonstrate that OSORA was applied appropriately to Plaintiff's home, and, thus, there is nothing precluding entry of summary judgment in favor of Plaintiff.

---

[5] Defendants have had multiple opportunities to show that OSORA was applied appropriately in this case. Defendants have failed to point to any park or playground, as defined by the statute, within two thousand feet of Plaintiff's home. Given that Defendant Oklahoma City admits it is charged with determining whether the OSORA residency restrictions apply to any given address, the Court finds that evidence in support thereof would be readily available if it exists. *See* Address Check Form [Doc. No. 31-9].

II. **Application of the Body Piercing and Tattooing Statute's Definition of "Playground" is Inappropriate**

The Court also rejects Defendants' assertion that the alleged common areas should be defined as "playgrounds" based on a statute regulating the location of body piercing and tattooing businesses. Pursuant to that statute, "playground" is defined as "a place, other than grounds at a private dwelling, that is provided by the public or members of a community for recreation." Okla. Stat. tit. 21 § 842.3(C)(3)(c). This argument is unpersuasive. First, as stated above, the alleged common areas are apparently privately owned residential lots. Second, pursuant to Okla. Stat. tit., 21 § 842.3(C)(3)(c), the definition of "playground" included therein is specifically limited to use in that subsection of the statute. *Cf. McClure v. ConocoPhillips Co.,* 2006 OK 42, ¶ 13, 142 P.3d 390, 395 ("When the provisions of a statute assign one meaning to a word or phrase, its definition will apply in every other instance in which the same term is found anywhere else *in the statutory compilation*.") (emphasis added).

Therefore, Defendants have failed to present evidence that any "common areas" are located within two thousand feet of Plaintiff's home, or that the alleged "common areas" depicted on the plat are provided by the public or community for recreation. Defendants have also failed to present any evidence that "common areas" are "playgrounds" within the meaning of OSORA.

III. **"To Exist" is Insufficient to Meet the Statutory Definition of Park**

Finally, the Court rejects Defendants' contentions that: (1) "[t]he fact that [the common areas] exist means they were provided, and there is no need to 'specifically

designate' them as a park"; and, (2) they "can think of no other purpose other than recreational use for a 'common area' that resembles an open field." Joint Opposition [Doc. No. 39] at 3. Defendants assert that "the common areas, by virtue of being common areas, are by definition being provided by the HOA (community)." *Id*. First, Defendants have failed to establish, by any evidence, that a common area exists. Second, Defendants' contentions contradict the explicit statutory language of OSORA, requiring that "any outdoor public area," to be deemed a park, must be "***specifically designated*** as being used for recreational purposes." Okla. Stat. tit. 21 § 1125 (emphasis added); *see* Order [Doc. No. 34] at 9. Third, the Court may not ignore the statute's unambiguous language simply because Defendants "can think of no other purpose" for a "'common area' that resembles an open field." Joint Opposition [Doc. No. 39] at 3. *See Pentagon Acad., Inc. v. Indep. Sch. Dist. No. 1 of Tulsa Cty.*, 2003 OK 98, ¶ 19, 82 P.3d 587, 591 ("When the language of a statute is plain and unambiguous, no occasion exists for further judicial inquiry or for the application of rules of construction, and the statute will be accorded meaning as expressed by the language employed.").

In fact, green spaces are made available for many reasons, sometimes simply to fulfill the mandates of "ordinances that require both residential and commercial zoned real property to include a designated percentage of green space." Order [Doc. No. 34] at 7, n.4 (citing *Oklahoma City Municipal Code* § 59-11100, *et. seq.*). It bears repeating that the "[a]pplication of the subject OSORA restriction to non-park green spaces would allow every small area of grass at the entrance to neighborhoods, along walkways, at the edge of

property lines, and in commercial parking areas to restrict the residency of sex offenders." *Id*.

## PERMANENT INJUNCTIVE RELIEF

Where the provisions of OSORA have been improperly applied against a person, an injunction enjoining Defendants "from enforcing [O]SORA" is appropriate. *See, e.g., Bollin v. Jones ex rel. State ex rel. Okla. Dep't of Corr.*, 2013 OK 72, ¶ 3, 349 P.3d 537, 539 (affirming a state trial court's issuance of a permanent injunction against the Oklahoma Department of Corrections, which prevented the Department from enforcing OSORA against a plaintiff).

The Court must address the four factors governing the issuance of a permanent injunction: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest. *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009).

As demonstrated by the analysis, *supra*, Plaintiff's claim that Defendants unlawfully applied the OSORA residency restrictions against him has been established through the summary adjudication process.

To constitute irreparable harm, an injury must be "both certain and great," not "merely serious or substantial." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004). Forcing Plaintiff to vacate his Edmond home would amount to destruction of his property rights. This interference with Plaintiff's property rights to his home—rights jealously guarded by the Constitution—results in an irreparable

injury. *Cf. Ziggy1 Corp. v. Lynch,* 123 F. Supp. 3d 1310, 1320 (W.D. Okla. 2015) (terminating a lease agreement and loss of lease locations constituted irreparable harm); *Angier v. Mathews Expl. Corp.,* 1995 OK CIV APP 109, 905 P.2d 826, 830 (continuing trespass on land constituted irreparable injury); *City of Blackwell v. Griffith Amusement Co.,* 1932 OK 320, 160 Okla. 264, 16 P.2d 233, 234 (injunction proper where property rights were harmed, inflicting irreparable injury). This injury to Plaintiff outweighs any injury to Defendants resulting from an injunction. Defendants may still properly apply the residency restrictions of OSORA, though they may not do so arbitrarily. The balance of interests militates in favor of granting a permanent injunction.

The public has an interest in the proper application of laws enacted by elected representatives. The state legislature, in promulgating OSORA, determined the proper balance between public safety and Plaintiff's rights, resulting in specific residency restrictions. Nowhere did the state legislature include any provisions in OSORA that would allow the Court to ignore the plain meaning of the statute. *See Reimers v. State, ex rel. Dep't of Corr.,* 2011 OK CIV APP 83, ¶ 28, 257 P.3d 416, 420. The public interest factor—as do all others in this case—weighs in favor of granting a permanent injunction.

## CONCLUSION

Based on Defendants' submissions, the Court finds no genuine issue for trial remains as to whether the residency restrictions were appropriately applied to Plaintiff's home pursuant to the statutory language of Okla. Stat. tit. 57, § 590(A) and Okla. Stat. tit. 21, § 1125, and that Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court grants summary judgment in Plaintiff's favor on his claim for declaratory relief.

Plaintiff's constitutional challenges to the statute shall be dismissed as moot without prejudice to refiling. A separate judgment will issue accordingly.

**IT IS SO ORDERED** this 28th day of August, 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge